UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA CLARK,

    Plaintiff,           Hon. Paul L. Maloney

v.                  Case No. 1:17-cv-821

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 59 years of age on her alleged disability onset date. (PageID.193). She possesses a General Equivalency Diploma (GED) and worked previously as a branch manager, school/office helper, medical office receptionist, and convenience store manager. (PageID.56-

57, 68). Plaintiff applied for benefits on July 29, 2014, alleging that she had been disabled since June 14, 2013, due to lower back pain, degenerative disc disease, headaches, fibromyalgia, sleep apnea, diabetes, high blood pressure, neuropathy, high cholesterol, chronic back pain, gout, knee pain, carpel tunnel syndrome, varicose veins, and severe foot pain. (PageID.193-205, 240).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.104-91). On April 29, 2016, Plaintiff appeared before ALJ James Kent with testimony being offered by Plaintiff and a vocational expert. (PageID.65-102). In a written decision dated August 1, 2016, the ALJ determined that Plaintiff was not disabled because she could perform her past relevant work as a medical office receptionist. (PageID.48-59). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.39-44). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from (1) osteoarthritis; (2) dysfunction of the major joints; (3) diabetes; (4) hypertension; and (5) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.50-51). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work, subject to the following limitations: (1) she requires a sit/stand option at will provided she is not off task more than ten percent of the time; (2) she can frequently push and pull with the upper extremities; (3) she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; and (4) she can never climb ladders, ropes, or scaffolds. (PageID.51).

A vocational expert testified that Plaintiff, given her RFC, would still be able to perform her past relevant work as a medical office receptionist. (PageID.92-95). The vocational expert further testified that there also existed approximately 129,000 jobs in the national economy

which Plaintiff could perform consistent with her RFC. (PageID.95-96). Based on this testimony, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I. **ALJ's Discussion of the Medical Evidence**

The ALJ's discussion of the medical evidence is as follows:

Prior to the alleged onset date, the claimant was seen for complaints of migraine headaches and fatigue. She indicated her migraines started at age 13 or 14. She was treated with Topamax, hydrocodone, Naprosyn, Imitrex, and Medrol without benefit. She was referred to an ophthalmologist who reluctantly diagnosed her with a basilar migraine. Magnetic resonance angiogram (MRA) of the neck on September 23, 2010 revealed probable decreased flow at the origins and proximal left subclavian and left common carotid arteries and right common carotid artery origin; mild stenosis of the right internal carotid artery origin, which is not hemodynamically significant; and normal left carotid bifurcation. Computerized tomography angiogram (CTA) was recommended. CTA results were normal. She underwent a lumbar puncture. The claimant was referred to U of M Neurology for assessment[.] Physical examination of the claimant was normal with full range of motion, tone, and strength, except for absent reflexes in the left knee and left ankle. She was started on Depakote and Elavil with minimal complaints afterwards. (Ex. 11F-14F, 17F).

The claimant had a sleep study done in October of 2010 that was positive for obstructive sleep apnea mild in non-REM sleep and severe in REM sleep. Treatment options included continuous positive airway pressure (CPAP) therapy, oral appliance therapy, uvulectomy, or nasal therapy. The claimant agreed to try a CPAP. She had surgery on her uvula, tonsils, and nose to in an attempt to overcome her sleep apnea. Records indicate she could not tolerate a CPAP[,] however, claimant indicated she was using a CPAP at home. (Ex. 2F, 14F, 16F, 17F).

On August 12, 2013, the claimant was diagnosed with non-insulin dependent type 2 diabetes. She had an HbA1c of 6.3 to 8.2 with a recommended range of less than 6.5 and blood sugar of 115 to 177 with a recommended range of 70 to 99. Reported symptoms included leg cramps, nocturia, polydipsia, polyphagia, polyuria, peripheral neuropathy, and headaches. She was instructed to adhere to a 1500-calorie diet, lose weight, exercise, and monitor her HbA1c quarterly. Claimant's compliance with treatment has been good. She takes her medication as directed, follows up as directed, and keeps a glucose diary. She performs foot self-exams several times per week and regularly sees [an] ophthalmologist with no findings of diabetic retinopathy, clinically significant diabetic macular edema,

or other ocular complications in either eye. (Ex. 1F, 2F, 7F, 8F, 12F, 17F, 25F).

The claimant has a history of benign hypertension treated with Atenolol and Maxzide. Compliance has been good with relatively normal blood pressures and no side effects. She takes her medication as directed and blood pressure readings indicated good control. She had had occasional episodes of hypotension, which have resulted in adjustments to her dosage. (Ex. 2F, 7F, 14F, 16F, 17F).

The claimant was seen numerous times for a cough with associated shortness of breath and chest pain. She was a current daily smoker. She was not in any respiratory distress although she did exhibit some decreased air movement bilaterally and some moderate diffuse bilateral wheezing. Breathing improved with use of breathing treatments and repeated x-rays of the chest showed no acute cardiopulmonary pathology. (Ex. 2F, 17F, 19F).

She also complained of lower back pain with constant pain and stiffness and weakness of the legs. The pain was exacerbated with movement and Neurontin did not help with pain. Weight loss and symptomatic treatment was recommended. Physical examination was normal and she had a normal gait. Further complaints of pain, swelling, and redness in the left lower extremity led to venous Doppler studies, which were negative for deep venous thrombosis and x-ray of the left foot, which was negative for fractures or lesions. The claimant was diagnosed with a probable acute flare of the osteoarthritis in the left foot or possible gout. X-ray of the left knee revealed moderate degenerative joint disease with no acute process. She was diagnosed with acute degenerative joint disease arthritis and instructed to wear a knee immobilizer. Re-x-ray of the left knee on June 19, 2015, revealed possible calcific bursitis and moderately severe osteoarthritis of the left knee with no fractures or dislocations seen. The claimant was scheduled for surgery after it was determined that long-term conservative measures would not provide any lasting result. The claimant cancelled her surgery because of insurance. She had bilateral cortisone injections in the knees. Examination of the knees noted full extension with only 100 degrees of flexion. There was small effusion in the right knee and none in the left. There was mild enlargement of both knees but no warmth or redness. Patellofemoral examination suggested moderate crepitus but no significant patellar compression pain. (Ex. 1F, 2F, 9F, l0F, 17F, 18F, 23F, 24F).

Magnetic resonance imaging of the lumbar spine on April 23, 2010, revealed degenerative disc disease and well contained mild protrusion of L4-L5 and L5-Sl disc with no evidence of disc herniation and mild spondylosis of the facet joints at the same levels bilaterally. In 2011, she was seen for generalized pain and leg pain. The claimant complained of generalized pain with no specific

localization. She also indicated pain in both legs right greater than left with pain in the right ankle. She had spider veins present on the legs and bulging varicosities. She generally had normal range of motion, strength, and tone but did have some occasional pain with range of motion in the back with flexion and extension along with some generalized mild tenderness in the right lower extremity. Homan's was negative. (Ex. 2F, 7F, 17F, 18F, 19F).

In 2015, the claimant complained of increasing low back pain with neuropathy. She was unable to describe the exact location of the pain and was very vague as to its intensity. She had not attempted any physical therapy, injection therapy, or chiropractic treatment. She denied any loss of bladder or bowel function. Physical examination noted positive straight leg raises bilaterally but FABRE testing was normal bilaterally. She had a wide-based antalgic gait and heel to toe, heel, toe, and tandem walking was severely impaired due to pain. Strength was five out [of] five throughout. She had some decreased pinpoint sensation due to neuropathy but the claimant was difficult to assess due to inability to describe pain. MRI of the lumbar spine January 22, 2015, demonstrated multilevel DDD worst at L4-L5 and L5-S1. There was some central stenosis at L4-L5 along with lateral recess stenosis, as well as extra-foraminal crowding of the nerve roots. Physical therapy, a SPECT scan, and flexion/extension x-ray were recommended. SPECT scan done on August 17, 2015 showed an abnormal radiotracer uptake consistent with degenerative changes from the L3-S1. Lumbar spine flexion/extension on the same date showed lower lumbar disc degeneration but no visible acute abnormalities and no instability. (Ex. 5F, 7F, 20F, 21F).

A chiropractor saw the claimant where she had chiropractic manipulation of the cervical, lumbar, and sacral regions. (Ex. 6F). On return to her treating physician in September of 2015, she exhibited a normal gait. She did have some pain with range of motion in the neck and back and there was mild tenderness over the right paraspinal musculature. The claimant was trying pool therapy. She continued to improve and in November of 2015, she had normal range of motion, strength, and tone. She had some pain with range of motion in the bilateral wrists but she had a negative Tinel's, equivocal Phalen's, normal grip strength, and intact distal sensation. She had nonspecific tenderness over bilateral cervical paraspinous, trapezius, and lumbar musculature. There was no bony mass or deformity. The claimant had a history of prior carpal tunnel release surgery. She was instructed to wear bilateral cock-up splints as directed. She was diagnosed with bilateral De Quervain's tenosynovitis and underwent cortisone injections and subsequent De Quervain's tendon release of the right wrist. (Ex. 7F, 23F).

Computerized tomography of the cervical spine on August 16, 2015 showed no fractures or malalignment. There was straightening of the normal lordotic curvature, which could relate to muscle spasms versus positioning. There were multilevel degenerative changes most advance[d] at the C5-C7 levels and a small low density nodule in the inferior aspect of the right lobe of the thyroid gland, similar to prior neck CT and thyroid ultrasound. (Ex. 21F, 9F).

R. Scott Lazzara, M.D., conducted a physical consultative examination of the claimant on October 28, 2014. He noted the claimant has a history of degenerative arthritis in the lumbar spine, feet, knees, and carpal tunnel syndrome. She was diagnosed with gouty arthropathy two years prior and is on Lyrica and Prednisone. She has had bunion surgery and left knee arthroscopy. She was not undergoing any active treatment and did not use an assistive device to ambulate. She had diabetes and is on Metoprolol, Metformin, and hydrochlorothiazide. Her sugar level runs around 140. She complains of neuropathy in her feet but is unsure of the cause. The claimant put forth good effort during the examination. She is right hand dominant. On examination, she had intact peripheral pulses and no edema. She had mild varicosities in the lower extremities. She had bunion deformities on both feet and synovial thickening in both knees and hips. There was no evidence of joint laxity, crepitance, or effusion. Tinel's were negative bilaterally. Grip strength was intact and dexterity was unimpaired. She had mild difficulty getting on and off the examination table and standing on either foot. She was unable to walk heel and toe and had moderate difficulty squatting. Straight leg raises were negative and there were no paravertebral muscle spasms. Range of motion was normal throughout except for extension and right and left lateral flexion of the dorsolumbar spine, abduction and forward elevation of the bilateral shoulders, internal and external rotation of the hips, and flexion of the knees. Motor strength was normal and tone was normal. Sensory was intact and Romberg testing was negative. She walked with a guarded gait and a mild left sided limp. She did not use an assistive device. Dr. Lazzara concluded that the claimant had findings of osteoarthritic disease to multiple joints most notably the knees and hips. She appeared relatively stable but could require operative intervention for her knees and hips. Her upper extremities appear relatively stable with no signs of fibromyalgia. She had some findings suggestive of restrictive lung disease but she appeared to be stable and her blood pressure was also stable with no findings of heart disease. Dr. Lazzara opined that the claimant could stand for four of eight hours; can occasionally bend, stoop, and squat; can climb stair with assistance; and can carry less than 15 pounds. Her cognition although not measured appeared to be average. (Ex. 4F).

(PageID.53-55).

**II.        The ALJ's RFC Assessment is Not Supported by Substantial Evidence**

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").  As noted above, the ALJ concluded that Plaintiff can perform a limited range of sedentary work.  Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence.  Specifically, Plaintiff faults the ALJ for failing to recognize the need to include in his RFC "handling and fingering limitations."   The Court agrees.

Treatment notes dated September 24, 2015, indicate that Plaintiff was experiencing pain in her wrists and hands.  (PageID.446).  An examination of Plaintiff's wrists revealed painful range of motion.  (PageID.448).  Treatment notes dated October 23, 2015, indicate that Plaintiff was suffering from DeQuervain's tenosynovitis[2] in both hands.  (PageID.685).  The doctor noted that this condition was "increasing [in] severity."  (PageID.685).  On December 19, 2015, Plaintiff underwent surgery on her right wrist.  (PageID.695).  Treatment notes dated December 31, 2015, indicate that Plaintiff was experiencing stiffness and 7/10 pain in her right wrist/hand.  (PageID.695).

In short, Plaintiff was diagnosed with a painful condition afflicting both of her hands which necessitated surgery.  There is no evidence in the record that this surgery was successful in reducing Plaintiff's pain or symptoms.   It is not reasonable to conclude, as the ALJ

---

[2] DeQuervain's tenosynovitis "is a painful condition affecting the tendons on the thumb side of your wrist." DeQuervain's tenosynovitis, available at https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/symptoms-causes/syc-20371332 (last visited on Aug. 8, 2018).   Individuals suffering from DeQuervain's experience pain when turning the wrist, grasping anything, or making a fist.   Moreover, "any activity that relies on repetitive hand or wrist movement. . .can make [DeQuervain's] worse."  *Id.*

did, that this impairment imposes no limitations on Plaintiff's ability to use her hands and fingers to perform work-related activities. Accordingly, the undersigned concludes that the ALJ's RFC determination is not supported by substantial evidence.

### III.     The ALJ Properly Evaluated Plaintiff's Obesity

Plaintiff argues that the ALJ failed to properly consider her obesity when assessing her RFC. Specifically, Plaintiff asserts that the ALJ failed to comply with Social Security Ruling 02-1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (S.S.R., Sept. 12, 2002). Social Security Ruling 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir., Dec. 22, 2009); *see also*, *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir., Jan. 31, 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff is obese, but the evidence does not support the argument that Plaintiff's obesity, either alone or in combination with her other impairments, impairs her to an extent greater than that recognized by the ALJ. Accordingly, this argument is rejected.

### IV.     Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court

is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: August 16, 2018            /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  U.S. Magistrate Judge